# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| MARK UREDA, Individually and on Behalf of All Others Similarly Situated, | Case No.: 20-cv-1171 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **Jury Trial Demanded** |
| STATE COLLECTION SERVICE INC., | |
| Defendant. | |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and Wisconsin Consumer Act, Ch. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Mark Ureda is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt incurred for personal, family, or household purposes.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the debt Defendant sought to collect from Plaintiff was incurred as a result of a consumer transaction.

6. Defendant State Collection Service, Inc. ("SCS") is a corporation with its principal place of business located at 2509 S. Stoughton Rd., Madison, WI 53716.

7. SCS is licensed as a "Collection Agency" under Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-BKG 74.

8. SCS is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

9. SCS is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. SCS is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat § 427.103(3).

## FACTS

10. On or around May 26, 2020, SCS mailed a debt collection letter to Plaintiff regarding an alleged debt owed to "AURORA ADVANCED HE" [*sic*]. A copy of this letter is attached to this complaint as <u>Exhibit A</u>.

11. Upon information and belief, each of the alleged debts referenced in Exhibit A were incurred as the result of a transaction for personal medical services with an agreement to defer payment. *See Tylke v. Advanced Pain Mgmt., S.C.*, Case No. 14cv5354 (Milwaukee Co. Cir. Ct., Dec. 11, 2014) ("Any time a merchant sends a bill for goods or services after a consumer transaction has taken place, there is an 'agreement to defer payment.'"); *see also, e.g.*, *Kelly v. Montgomery Lynch & Assocs.*, 2008 U.S. Dist. LEXIS 30917, at * 9-10 (N.D. Ohio Apr. 15, 2008) ("The debt at issue in this case involves financial expenses incurred … in exchange for medical

2

services …. Pursuant to this debt, the Plaintiff was offered the right to receive medical services and to defer payment on those financial obligations. This is a classic transaction out of which debts arise under the FDCPA.").

12. Upon information and belief, Exhibit A is a form letter, generated by a computer, and with the information specific to Plaintiff inserted by the computer.

13. Upon information and belief, Exhibit A is a form debt collection letter, used by SCS to attempt to collect alleged debts.

14. Exhibit A includes the following representations:

| Creditor | Patient Name | Service Date | Client Acct # | Visit # | Charge Amount | Balance Due |
|---|---|---|---|---|---|---|
| AURORA ADVANCED HE | MARK UREDA | 05/30/19 | | | $6410.00 | $973.90 |
| | | | | | Balance Due: | $ 973.90 |

15. Exhibit A states a "Charge Amount" of $6,410.00 and a "Balance Due" of $973.00.

16. Exhibit A further states that consumers "unable to pay the Balance Due in full" may "contact our office to complete a financial assessment" which would "enable us to determine whether you qualify for a reduced offer of the Balance Due for less than the full balance."

17. An unsophisticated consumer would be confused as to whether a payment of the total balance in either of the letters would actually pay off the alleged debt.

18. In the context of a debt, the amount that is "owed" is distinguishable from the amount that is "due," with debtor's often owing a total amount, with only a portion of that amount "due" at a particular time. *See Machnik v. RSI Enters.*, No. 17-cv-864, 2017 U.S. Dist. LEXIS 160772, at *6 (E.D. Wis. Sept. 29, 2017).

19. An unsophisticated consumer would not know whether payment of the "Balance Due" would actually satisfy the debt or if Defendant or the creditor would attempt to collect other portions of "Charge Amount" as they became due.

3

20.     Particularly with respect to medical services, a consumer may be concerned that there is an outstanding billing dispute respecting all or part of the difference between the "Charge Amount" and the "Balance Due."  Indeed, billing for medical services, which involves several levels of billing based on numerous accounts, providers, and insurers, is extraordinarily complicated and confusing to consumers.  *E.g.,* Wisconsin Department of Agriculture, Trade, and Consumer Protection, "Consumer Protection Fact Sheet – Medical Billing," https://datcp.wi.gov/Pages/Publications/MedicalBilling147.aspx) (accessed: July 17, 2020) ("Be prepared to receive separate bills for physician services such as anesthesiologist, radiologist or surgeon.  This means you may receive several billings from just one visit to the hospital or clinic.").

21.     Upon information and belief, Plaintiff is not being, and cannot be, asked to pay the "Charge Amount."  Upon information and belief, the "Charge Amount" is the total amount for medical services before any insurance adjustments and payments were applied to the debt.  An unsophisticated consumer cannot possibly be expected to know this.

22.     Even assuming the consumer understood that the "Charge Amount" referred to the amount billed to the consumer's insurer, the inclusion of the "Charge Amount" in a dunning letter would make the consumer wonder whether payments from the consumer's insurer were still pending.  Indeed, the three major consumer reporting agencies (Equifax, Experian, and TransUnion, collectively the "CRAS") have all recognized that many purported "debts" are only considered outstanding or delinquent because of potential disputes and confusion about whether the consumer's insurer may or should be covering all or part of the claim, or whether the claim may be subject to adjustments to the portion the consumer is required to pay based on agreements between the consumer's insurer and the medical provider.  *See Slogaski v. Amcol Systems, Inc.*, Case No. 18-c-1604-LA, Dkt. No. 19 (order denying motion to dismiss) (slip op.) at 1-2 (E.D. Wis.

July 12, 2019) (noting that the CRAs "agreed to prevent the reporting and display of medical debt when the date of the first delinquency is less than 180 days prior to the date the account is reported" in order "to allow consumers time to resolve the disputes with insurers and delays in payment that frequently arise in the context of medical billing.")

23. At a minimum, the consumer would feel pressure to contact Defendant about whether the "Charge Amount" might become due at some later time, at which point Defendant would have the opportunity to use high-pressure tactics to obtain payment or additional information from the consumer.

24. The Seventh Circuit has held that a debt collector must state the amount of the debt without "obscur[ing] it by adding confusing other information (or misinformation)." *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 876 (7th Cir.2000); *Veach v. Sheeks*, 316 F.3d 690, 693 (7th Cir. 2003) ("When there are two different accounts of what a debtor actually owes the creditor, that one version is the correct description does not save the other, since under the unsophisticated debtor standard, 'a letter may confuse even though it is not internally contradictory.'") (quoting *Johnson v. Revenue Mgmt. Corp.*, 169 F.3d 1057, 1060 (7th Cir. 1999)).

25. Further, upon information and belief, the representation that the consumer must "complete a financial assessment" so that Defendant can "determine whether you qualify for a reduced offer of the Balance Due for less than the full balance" is false and misleading. Upon information and belief, Defendant has blanket authority from the creditor to enter into payment plans and satisfy debts irrespective of such financial assessments and the purpose of the purported financial assessment requirement is to obtain information from the consumer under false pretenses. *See Niland v. Alliance Collection Agencies Inc.*, No. 17-cv-722, 2018 U.S. Dist. LEXIS 168680,

at *7-9 (E.D. Wis. Sept. 28, 2018) (finding an allegedly false representation that consumer needed to provide financial information to the debt collector before settling the debt was actionable under the FDCPA).

26. Plaintiff read Exhibit A.

27. Plaintiff was misled and confused by Exhibit A.

28. The unsophisticated consumer would be misled and confused by Exhibit A.

### ***The FDCPA***

29. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l& Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing

6

in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes ... do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

30. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

31. Misrepresentations of the character, amount or legal status of any debt, injures or risks injury to interests expressly protected by Congress in the FDCPA. *See Degroot v. Client Servs.*, 2020 U.S. Dist. LEXIS 6677 (E.D. Wis. Jan. 15, 2020) ("[A]n informational injury can be concrete when the plaintiff is entitled to receive and review substantive information."); *Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Untershine v. Encore Receivable Mgmt., Inc.*, 18-cv-1484 (E.D. Wis. August 9, 2019); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the

8

communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

32. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

33. 15 U.S.C. § 1692e(2)(a) specifically prohibits "the false representation of the character, amount, or legal status of any debt."

34. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

35. 15 U.S.C. § 1692f generally prohibits any "unfair or unconscionable means to collect or attempt to collect any debt."

36. 15 U.S.C. § 1692f(1) specifically prohibits "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

### *The WCA*

37. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

38. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

39. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

40. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

41. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stat. § 427.104.

42. Further, the WCA provides that any customer affected by a violation of the WCA or the federal consumer credit protection act may seek actual damages, statutory damages, reasonable attorneys' fees, and declaratory and injunctive relief. Wis. Stat. §§ 426.109, 426.110.

43. Indeed, the WCA specifically provides that the possibility that the customer has an adequate remedy at law "shall not be a defense" if a customer seeks declaratory and injunctive relief. Wis. Stat. § 426.109.

44. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

45. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

46. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing Gammon v. GC Servs. Ltd. P'ship, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

47. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer … in such a manner as can reasonably be expected to threaten or harass the customer."

48. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer …." Wis. Admin. Code § DFI-Bkg 74.16(9) defines such "other conduct" as "including conduct which violates the Federal Fair Debt Collection Practices Act."

49. The Wisconsin Department of Financial Institutions, which is tasked with regulating licensed collection agencies, has found that "conduct which violates the Federal Fair Debt Collection Practices Act" can reasonably be expected to threaten or harass the customer. *See* Wis. Admin. Code DFI-Bkg 74.16(9) ("Oppressive and deceptive practices prohibited.").

## COUNT I – FDCPA

50. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

11

51. Exhibit A contains false, deceptive, confusing, misleading, and unfair representations about the amount, character, and legal status of the debt.

52. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10), 1692f, and 1692f(1).

## COUNT II – FDCPA

53. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

54. Exhibit A falsely represents that the consumer cannot settle the debt or enter into a payment plan without providing additional information and completing a financial assessment.

55. Defendant violated 15 U.S.C. §§ 1692e, 1692e(10), and 1692f.

## COUNT III – WCA

56. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

57. Defendant is licensed as a "Collection Agency" under Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-BKG 74.

58. Exhibit A contains false, deceptive, confusing, misleading, and unfair representations about the amount, character, and legal status of the debt.

59. Exhibit A falsely represents that the consumer cannot settle the debt or enter into a payment plan without providing additional information and completing a financial assessment.

60. Defendant violated the FDCPA.

61. Defendant violated Wis. Stat. §§ 427.104(1)(g) and 427.104(1)(h).

## COUNT IV – DECLARATORY AND INJUNCTIVE RELIEF

62. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

63. Exhibit A contains confusing and misleading representations about the amount, character, and legal status of the alleged debt.

64. Plaintiff is entitled to a judicial declaration of the actual amount that Plaintiff owes.

65. Plaintiff is entitled to an injunction against Defendant attempting to collect a "Charge Amount."

## CLASS ALLEGATIONS

66. Plaintiff brings this action on behalf of a Class, consisting of:

(a) all natural persons in the State of Wisconsin, (b) who were sent a collection letter in the form represented by Exhibit A to the complaint in this action, (c) seeking to collect a debt with a "Creditor" listed as "AURORA ADVANCED HE," (d) between July 30, 2019 and July 30, 2020, inclusive, (e) that was not returned by the postal service.

67. The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of each Class.

68. There are questions of law and fact common to the members of each Class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with the FDCPA and WCA.

69. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

70. Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

13

71. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

72. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) declaratory relief;

(b) injunctive relief;

(c) actual damages;

(d) statutory damages;

(e) attorneys' fees, litigation expenses and costs of suit; and

(f) such other or further relief as the Court deems proper.

Dated: July 30, 2020

**ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com